IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOHANNA ROLDÁN-COLÓN,

Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

Defendant.

CIVIL NO. 19-1787 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

On August 15, 2019, Plaintiff Johanna Roldán-Colón ("Plaintiff") filed the present action to obtain judicial review of the final decision of Defendant Andrew Saul, the Commissioner of Social Security ("Commissioner" or "Defendant"), who denied her application for disability benefits. (Docket No. 1).[1] On May 15, 2020, after Plaintiff consented to proceed before a Magistrate Judge, the presiding District Judge referred this case to the undersigned for all further proceedings, including the entry of judgment.[2] (Docket Nos. 27 and 28).

On February 10, 2020, the Commissioner answered the Complaint and thereafter filed a copy of the administrative record. (Docket Nos. 14 and 15). On April 13, 2020, Plaintiff filed her memorandum of law (Docket No. 19) and on June 29, 2020, the Commissioner filed his memorandum of law. (Docket No. 29).

---

[1] 42 U.S.C. Sec. 405(g), provides for judicial review of the final decision of the Commissioner. "... [t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment without remanding the cause for rehearing". Section 205(g).

[2] The government has already provided a general consent to proceed before a Magistrate Judge in all Social Security cases. Title 28 U.S.C. Section 636(b)(1)(A), (c)(1) and (c)(2); Fed.R.Civil P. 73(a).

After a careful review of the entire record, the Court AFFIRMS the Commissioner's decision.

## ADMINISTRATIVE AND PROCEDURAL HISTORY

Plaintiff, a former secretary, filed an application for disability benefits with an alleged onset date of disability of December 10, 2012. The application was initially denied, as was the reconsideration. (Tr. pp. 669-684 and 686-701). Plaintiff then requested an administrative hearing which was held on November 13, 2017 and continued on August 21, 2018.[3] Plaintiff, who was present with a representative, testified regarding her alleged disabilities. (Tr. pp. 39-51 and 54-69). Testimony was also heard from Medical Expert Dr. Luis Cánepa ("Dr. Cánepa") and Vocational Expert Beth Littman ("VE" or "Ms. Littman") regarding the kinds of jobs that Plaintiff could perform and that were available in the national economy. (Tr. pp. 54-69).

On October 1, 2018, the presiding Administrative Law Judge ("ALJ") issued an opinion finding Plaintiff was not disabled from the onset date of December 10, 2012 through the date of the ALJ's decision, December 31, 2017. (Tr. pp. 22-31).

The ALJ made the following findings of fact as part of his fact-finding responsibilities:

1. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017.

---

[3] Plaintiff was allowed, at the initial hearing held on November 13, 2017, 30 days to submit medical evidence. The same could not be done due to Hurricane Maria. Thus, the case was rescheduled.

2. Plaintiff did not engage in any substantial gainful activity since her alleged onset date of December 10, 2012.

3. Plaintiff had the following severe impairments: major depressive disorder, recurrent, severe, without psychotic features (20 CFR 404.1520(c)).

4. Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exceptional levels but with the following non-exertional limitations: Plaintiff was limited to perform simple, routine, and repetitive tasks. She could respond appropriately to supervisors and coworkers frequently and public occasionally.

6. Plaintiff was unable to perform any past relevant work.

7. Plaintiff was born on January 4, 1971, and was 45 years old, which is defined as a younger individual, age 18-49 on the alleged disability onset date.

8. Plaintiff was not able to communicate in English and was considered in the same way as an individual who is illiterate in English.

9. Transferability of job skills was not an issue in this case because the RFC limited Plaintiff to unskilled work.

10. Considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform.

11. Plaintiff was not under a disability, as defined in the Social Security Act, at any time from December 10, 2012, the alleged onset date, through December 31, 2017, the date last insured.

The Appeals Council subsequently denied Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner, subject to review by this Court. (Tr. pp. 1-6).

Plaintiff objects the ALJ's final decision denying her disability benefits, alleging the ALJ erred in her RFC assessment and in not assigning the treating physician controlling weight. Plaintiff also avers that the ALJ erred in considering the medical expert's testimony during the hearing because the medical expert did not specify if Plaintiff equaled the criteria of Listing 12.04.

## STANDARD

To establish entitlement to disability benefits, the burden is on the claimant to prove disability within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if he/she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A claimant is unable to engage in any

substantial gainful activity when the claimant is not only unable to do his/her previous work but, considering age, education, and work experience, cannot engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he/she lives, or whether a specific job vacancy exists, or whether he/she would be hired if he/she applied for work. 42 U.S.C. § 423(d)(2)(a).

To determine whether a claimant is disabled, all the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied in making a final determination as to whether or not a claimant is disabled. 20 C.F.R. § 404.1520; see Bowen, 482 U.S. at 140-42; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982). At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he/she is, disability benefits are denied. § 404.1520(b). If not, the decision-maker proceeds to step two, where he or she must determine whether the claimant has a medically severe impairment or combination of impairments. See § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment or combination of impairments is severe, the evaluation proceeds to the third step to determine whether the impairment or combination of impairments is equivalent to one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. § 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is

not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step through which the ALJ determines whether the impairment prevents the claimant from performing the work he/she has performed in the past. If the claimant can perform his/her previous work, he/she is not disabled. § 404.1520(e).

Once the ALJ determines that the claimant cannot perform his or her former kind of work, then the fifth and final step of the process demands a determination of whether claimant is able to perform other work in the national economy in view of the residual functional capacity, as well as age, education, and work experience. The claimant would be entitled to disability benefits only if he/she is not able to perform any other work whatsoever. §§ 404.1520(f).

In the case at bar, the ALJ determined at step four that Plaintiff could not return to her past work, and at step five that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform. Specifically, the ALJ found that Plaintiff could be a photocopying machine operator (DOT Code 207.685-014), which is light; a laundry laborer (DOT Code 361.687-018), which is medium; and a hand packager (DOT Code 920.587-018) also medium. The ALJ then concluded Plaintiff was not disabled.

## LEGAL ANALYSIS

The Court's review in this type of case is limited to determine whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. See Manso-Pizarro v. Sec'y of Health and Human Servs, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence,

42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999). Substantial evidence is "more than a mere scintilla and such, as a reasonable mind might accept as adequate to support a conclusion". Richardson v. Perales, 402 U.S. 389 (1971), *quoting* Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197 (1938). The court will set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on a legal error. See Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001); Rodríguez v. Sec'y of Health and Human Servs, 647 F.2d 218, 222 (1st Cir. 1981).

Plaintiff's first argument is that the ALJ incorrectly determined Plaintiff's RFC. The ALJ is responsible for determining a claimant's RFC and, in making that determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by any medical sources. See 20 C.F.R. §§ 404.1527(d)(2), 404.1545(a)(3), 404.1546(c). It is well settled that courts must give deference to the ALJ's interpretation of the medical record. Although an ALJ is not at liberty to ignore medical evidence or substitute his/her own views for uncontroverted medical opinion, upon the existence of conflicts in the medical record from the report and sources, it is for the ALJ and not this Court to resolve them. See Nguyen, 172 F.3d 31; Lizotte v. Sec'y of Health & Human Servs, 654 F.2d 127 (1st Cir. 1981) (the resolutions of conflicts in the evidence and the determination of the ultimate question of disability is for him [the ALJ], not for the doctors or for the courts); see also Rodríguez v. Sec'y of Health and Human Servs., 647 F.2d at 222. The ALJ's findings of

fact must be upheld unless "a reasonable factfinder would have to conclude otherwise." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012).

In the present case, the ALJ determined that Plaintiff suffered from major depressive disorder, recurrent severe without psychotic features. (Tr. p. 24).[4] When a mental impairment is claimed, the ALJ must examine the four broad functional areas, to wit, activities of daily living; social functioning; concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). To satisfy the criteria of Listing 12.04 (Affective Disorders), commonly known as the "paragraph B" criteria and meet one of the listed impairments, a claimant must have one extreme or two marked restrictions in the previously mentioned broad areas of functioning. The ALJ found that the record did not support marked restrictions in any of the categories, nor contained evidence of extended or repeated episodes of decompensation, thus not satisfying the criteria of Listing 12.04 (Affective Disorders).

As to Plaintiff's mental impairment, the ALJ decided that she only had moderate limitations in all areas (Tr. pp. 25-26). The medical record showed that Plaintiff responded well to treatment. (Tr. pp. 27, 1154-1218, and 1225-1311). The ALJ also concluded that the evidence noted improvement and stabilization of Plaintiff's mental symptoms after said treatment. (Tr. pp. 27, 1129-45, 1154-1218, 1220-24 and 1312-32). As to episodes of decomposition, the medical evidence only presented a history of partial

---

[4] The ALJ found that Plaintiff did not suffer from any severe physical impairment. This conclusion was buttressed by the findings of state agency physicians Dr. Jose González-Méndez ("Dr. González") and Dr. Rafael Queipo (Dr. Queipo"). (Tr. pp. 669-84 and 686-701).

hospitalizations. Plaintiff was partially hospitalized from April 21 to April 30, 2014 at San Juan Capestrano and again from August 11 to August 17, 2015. Then, twice again from February 4, 2016 to February 10, 2016 and from May 2 to May 8, 2017. These four instances were not inpatient treatment and were of little duration. (Tr. pp. 27, 946-53, 1129-45, 1150-1218, 1220-1332, and 1428-98). This evidence supports a finding that Plaintiff's mental condition was mild and did not substantially affect her capacity to work.

The Court also examines Plaintiffs' allegations that the ALJ erred in not assigning the treating physician controlling weight. As is well known, a treating physician's opinion is controlling if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." See Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). Treating physicians' opinions are ordinarily accorded more deference in Social Security disability proceedings because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 416.927(c)(2). Regulations also state that "the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we

will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source". 20 C.F.R. § 404.1527(c)(2)(i).

For this reason, the ALJ will give controlling weight to the opinions of treating physicians if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. Berríos-Vélez v. Barnhart, 402 F. Supp. 2d 386, 391 (D.P.R. 2005). Generally, the more consistent an opinion is with the record as a whole, the more weight is given to it. 20 C.F.R. § 404.1527(c)(4); Bouvier v. Astrue, 923 F.Supp.2d 336, 347–48 (D.R.I. 2013); Agostini-Cisco v. Comm'r of Soc. Sec., 31 F. Supp. 3d 342, 348 (D.P.R. 2014). This weighing of the evidence is a responsibility that has always been entrusted to the ALJ, and which falls squarely within the ALJ's responsibilities.

If the treating-source opinion conflicts with other opinions in the record, however, the ALJ "may reject the opinion of the treating physician so long as an explanation is provided, and the contrary finding is supported by substantial evidence." Tetreault v. Astrue, 865 F. Supp. 2d 116, 125 (D. Mass. 2012). It can also be rejected when treating sources' opinions are not "well-supported by medically acceptable ... diagnostic techniques" and are "inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2).

While the ALJ in this case found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, he concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical record. (Tr. pp.

27 and 29). As to Plaintiffs treating physicians, the medical record only provides treatment notes of their sessions. There are no medical opinions issued by them pursuant to the regulations. Dr. Edna Laracuente treated Plaintiff at San Juan Capestrano Hospital, where she diagnosed her with recurrent severe major depression and anxiety, but only her progress notes were included. (Tr. pp. 1312-32 and 1407-13). Dr. Edelmiro Rodríguez ("Dr. Rodríguez") diagnosed Plaintiff with major depressive affective disorder. In Plaintiff's treatment with him, she was cooperative and showed good insight and judgment. During Plaintiff's visits, she informed Dr. Rodríguez that she was also being treated by Dr. Amalia Alicea ("Dr. Alicea"). (Tr. pp. 1129-44). The medical record also only included Dr. Alicea's progress notes, some of which are illegible, and contained no formal opinions about Plaintiff's capacities. Dr. Alicea gave Plaintiff a GAF that ranged from 51 to 52. (Tr. pp. 1068-1102).[5]

The ALJ assigned great weight to medical expert Dr. Cánepa, who testified during the hearing, consulting examining psychiatrist Dr. Pedro González-Vega ("Dr. González-Vega"), and state agency medical consultants Dr. Luis Umpierre (Dr. Umpierre"), Dr. Annette de Paz-Ortiz (Dr. de Paz") (psychiatrists), and Dr. González and Dr. Queipo (physiatrists). (Tr. pp. 28-9, 669-84, 686-701, 1052-60). The ALJ also assigned great weight to VE Ms. Littman. (Tr. p. 29).

---

[5] The Global Assessment of Functioning (GAF) is a numeric scale (0 through 100) used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of adults, e.g., how well or adaptively one is meeting various problems-in-living. The score is often given as a range. Since 2013, the GAF is no longer used in the DSM-5. A GAF score of 51-60 shows moderate symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, with some meaningful interpersonal relationships. These symptoms do not preclude a claimant from performing all gainful activity.

Johanna Roldán-Colón v. Commissioner of S.S.
Opinion and Order
Civil No. 19-1787 (CVR)
Page No. 12

As previously stated, state agency consulting physicians Dr. González and Queipo found that Plaintiff did not suffer from any severe physical impairment, a conclusion which has not been challenged by Plaintiff. Plaintiff claimed that her vitiligo condition *complicated* her mental condition, but little evidence was presented as to it affecting her greatly physically. (Tr. pp. 955-56, 1047, 1063-1067, and 1147-48). The ALJ considered her allegation of vitiligo, but he deemed it not severe. (Tr. pp. 24-25).

On June 20, 2015, Dr. González-Vega examined Plaintiff and noted that Plaintiff did not have any physical impairments. He diagnosed her with major depressive disorder, recurrent severe, in partial remission and gave her a guarded prognosis. Dr. González-Vega found the following: 1) Plaintiff's affect was appropriate, thought form was coherent, relevant, and logical; 2) her insight was moderate with mostly adequate, oriented mental status; 3) her memory seemed adequate to slightly diminished, and: 4) she was competent to handle her funds. Dr. González-Vega assigned Plaintiff a GAF of 70, which was commensurate with some mild symptoms. (Tr. pp 1052-60).

Dr. Cánepa testified during the hearing that, after reviewing the medical evidence, he concluded that Plaintiff could perform simple, repetitive, and routine tasks; sustain attention for two hours at a time during an eight-hour workday; and could respond appropriately to supervisors and coworkers frequently, and to the public occasionally. (Tr. pp. 28 and 41-47). This conclusion was in line with Dr. González-Vega's assessment.

State consulting physicians Drs. Umpierre and De Paz further bolstered these conclusions with their examination of the record evidence, which determined that Plaintiff's condition was moderate and that the evidence did not establish the presence of

the "C" criteria.[6] They also concluded that the evidence in record as to depression was inconsistent. (Tr. pp. 669-84 and 686-701).

As is widely known, state agency consultants are highly qualified medical personnel who are experts in the evaluation of the medical issues involved in disability claims and whose conclusions are to be afforded great weight if they are supported by other evidence in the record. 20 C.F.R. § 404.1527(e)(2)(i); see also Coggon v. Barnhart, 354 F. Supp. 2d 40, 54 (D. Mass. 2005); 20 C.F.R. §404.1527(e)(2) ("the more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion").

The ALJ assigned great weight to the state agency medical consultants because he found that their opinions were consistent with the finding of the RFC. He even assigned greater limitations considering Plaintiff's mental impairment. He opined that the allegations of the severity and functional restriction were not supported by the evidence. (Tr. p. 29). The treating physicians did not provide an opinion per se and the medical record only contains their notes and observations. Thus, the Court concludes that the ALJ assigned proper weight to treating physicians' records, supporting the ALJ's conclusion.

Plaintiff's third allegation is that the medical expert erred by not specifying during the hearing if Plaintiff equaled the Listing and instead merely mentioned that Plaintiff did

---

[6] "Paragraph C provides the criteria we use to evaluate "serious and persistent mental disorders." To satisfy the paragraph C criteria, your mental disorder must be "serious and persistent"; that is, there must be a medically documented history of the existence of the disorder over a period of at least 2 years." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 12.00G.

not meet the criteria of the Listing. Plaintiff alleges that there is a difference between "equaling" and "meeting" a Listing. However, the Court does not agree. It is Plaintiff's burden to prove that she met or "equaled" the Listing and not Defendant's burden. See Poupore v. Astrue, 566 F.3d 303, 306 (2nd Cir. 2009). It was not necessary for the ALJ to request that Dr. Cánepa be more specific or include more restrictive hypothetical questions containing limitations that the ALJ found were not reasonably credible. See Vélez-Pantoja v. Astrue, 786 F. Supp. 2d 464, 469 (D.P.R. 2010) (noting that it "is well within the ALJ's authority to weigh the evidence ... and to use only credible evidence in posing a hypothetical question") (citing Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994) (hypothetical questions need only "reasonably incorporate the disabilities recognized by the ALJ").

In the subject case, the Court must emphasize the importance of credibility. The Court of Appeals of the First Circuit has recognized that "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence." Irlanda Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 991); see also Tremblay v. Sec'y of Health and Human Servs., 676 F.2d 11, 12 (1st Cir. 1982); Rodríguez, 647 F.2d 218, 222 (1st Cir. 1981). An ALJ is not required to accept subjective complaints without question, but rather may exercise discretion in weighing the testimony considering other evidence of record. See Irlanda Ortiz, 955 F.2d at 769 (stating that the ALJ's credibility determination is entitled to deference). In assessing credibility, the ALJ must evaluate allegations together with the objective medical and other evidence. See 20 C.F.R. § 404.1529(c). The ALJ should also consider the

consistency of statements and available evidence, as well as factors such as the individual's treatment history, daily activities, and medications. See 20 C.F.R. § 404.1529(c)(4).

The ALJ was in the unique position to personally witness Plaintiff's demeanor at the hearing. As such, it allowed him an important opportunity to assess Plaintiff's credibility regarding her condition. Rodríguez v. Sec'y of Health and Human Servs., 647 F.2d at 222 (he [the ALJ] found some of the plaintiff's statements at the hearing inconsistent with others she had made and gave her testimony "low credibility"). It has always been the province of the ALJ and not this Court to assess issues of credibility. See Valiquette v. Astrue, 498 F. Supp. 2d 424 ("[i]ssues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Secretary." (*quoting* Rodríguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965)).

The ALJ concluded that Plaintiff's subjective complaints and alleged functional limitations were consistent throughout the record to support the RFC determined. (Tr. p. 27). Thus, the Court finds no error with the Commissioner's conclusion that Plaintiff was not disabled from the alleged onset date of December 10, 2012, through the date last insured, December 31, 2017. Such a conclusion is supported by substantial evidence in the record as a whole.

## CONCLUSION

For the reasons above discussed, the Court finds there is substantial evidence on the record in support of the Commissioner's decision. Consequently, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Judgment is to be entered accordingly.

In San Juan, Puerto Rico, on this 9th day of March 2021.

                                          S/CAMILLE L. VELEZ-RIVE
                                          CAMILLE L. VELEZ RIVE
                                          UNITED STATES MAGISTRATE JUDGE